IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON M. WAUGH,                  : Case No.:4:04cv1791
                                 :
              Plaintiff          :
                                 : Judge Jones
        v                        :
                                 :
LOWE'S COMPANIES, INC.,          :
                                 :
              Defendant          :

## MEMORANDUM AND ORDER

August 16, 2005

## THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Pending before the Court is a Motion for Summary Judgment filed by

Defendant Lowe's Home Centers, Inc. ("Defendant" or "Lowe's") ("the Motion")

(doc. 16) on May 2, 2005.  For the reasons that follow, the Motion will be denied.

## STATEMENT OF RELEVANT FACTS:

We initially note that we will, where necessary, view the facts and all

inferences to be drawn therefrom, in the light most favorable to the nonmoving

party, the Plaintiff, in our analysis of the pending Motion.

Plaintiff was employed on or about January 27, 2000 as a Team Member

One at the Distribution Center in Pottsville, Pennsylvania.  Plaintiff's first several

days at the Distribution Center were spent at employee orientation or "initial

1

training" where Plaintiff received and read an employee orientation workbook entitled "Lowe's Distribution Orientation Workbook."  This workbook contained Lowe's Attendance and Absenteeism Policy ("Attendance Policy") and a fact sheet outlining Plaintiff's rights under the FMLA.  (See Rec. Doc. 16, Ex. A [Waugh Depo.] at 43-68).  The FMLA fact sheet provided to Plaintiff explained his rights and responsibilities under the FMLA including job and benefits protection, Lowe's advance notice, as well as medical certification requirements prior to taking FMLA leave.  (See Rec. Doc. 16, Ex. B, at 2).

Plaintiff testified that he read and understood Lowe's Attendance Policy and the consequences for not following it.  The Attendance Policy provided to Plaintiff explained, in pertinent part, the following "General Guidelines" and other information:

- If an employee will be absent or tardy, the employee must report the absence and circumstances before the start of the scheduled shift time by calling the designated "Call-In" number.  Employees must provide their name, scheduled shift time, reason for absence, and when they are expected to return.

- Failure to provide such notice may result in a "No-Call" unless there was a legitimate reason for failing to provide notice, such as a medical emergency.
- To avoid a "No-Call," employees must report all absences directly to the "Call-In" number designated before the start of the employee's assigned work shift.  Employees should not leave a message with the receptionist, security guard, or another Team member.

2

- Approval may require that you schedule your absence for a time which minimizes the impact on the operation and other Team members such as vacations and some Family and Medical Leave Act absences.

- Failure to provide notice of an absence prior to the start of a scheduled work shift will result in a "No-Call," unless the employee can provide a legitimate reason for not doing so, such as a medical emergency. "No-Calls" occurring for three (3) consecutive scheduled workdays will be considered a voluntary termination. Each "No-Call" will be counted as one (1) occurrence under this program. Three (3) "No-Calls" within a 12-month period will normally result in a termination of employment.

- Each unapproved absence or related consecutive absence from a scheduled work shift will be recorded as one occurrence.

- Each unapproved absence for a partial day results in a half occurrence

- If proper notice is provided and an absence is approved under the Family Medical Leave Act, the absence is not considered under the Company's Corrective Action Procedure. "You should familiarize yourself with the Company's policy for complying with the Family and Medical Leave Act."

- Occurrences are calculated on a twelve month basis.

- Employees who accumulate eight (8) occurrences in any twelve-month period are subject to termination. All termination cases will be reviewed thoroughly the Regional General Manager or HR Manager verifying the Team member's overall attendance record, length of service, and any special circumstances which have contributed to the overall situation. "The Regional General Manager or HR Manager has the right to authorize termination or not after review."

- Employees must provide advance notice for approved absences.

See Pl.'s Appendix, at 1-5; see also Rec. Doc. 16, Ex. B, at 3-7.

In March 2002, Plaintiff requested and received information from Lowe's regarding his current level of occurrences, sick hours, and vacation hours. <u>See</u> Rec. Doc. 16, Ex. D.  On March 14, 2002, Plaintiff does not dispute that he had one half of an occurrence. <u>See</u> <u>id.</u> at Ex. A [Waugh Depo.] at 114.   Between March 14, 2002 and June 3, 2002, Plaintiff was absent from work on the following dates: April 12, April 13, May 7, May 11, May 12, June 1, and June 2.  Plaintiff was late for work or left early on March 20, 2002 and March 25, 2002.  Within the time-period of March 14, 2002 and June 3, 2002, the contested dates are June 1, 2002 and June 2, 2002.  Plaintiff asserts that the aforementioned occurrences with which he was charged should have been approved under the FMLA.  He also argues that he called in on the contested dates as required under Lowe's applicable policies, as will be discussed more fully below.  Defendant, however, asserts that Plaintiff was absent from work for an unapproved reason on all of the aforementioned dates.

On or about May 24, 2002, Plaintiff met with Tim Shuman ("Mr. Shuman"), Human Resources Manager of the Distribution Center for Lowe's, to discuss whether he was eligible to take leave under the FMLA.  (<u>See</u> Rec. Doc. 16, Ex. A [Waugh Depo] at 158).  During this meeting, Plaintiff explained to Mr. Shuman that his girlfriend, Christine Lazovi ("Ms. Lazovi"), who was nine months pregnant

with his child, was "restricted to her bed currently, and the doctors had told her that that was most likely going to continue after the birth for a period of at least six weeks." Id. at 156, 193.  Additionally, Plaintiff explained to Mr. Shuman that he was requesting intermittent leave for the care of the baby, not for the care of his girlfriend. Id. at 157.

Based on Plaintiff's representations, Mr. Shuman provided him with a medical leave request form and instructed Plaintiff to complete the form, include a medical certification from a physician, and return the form to him for approval. Id. at 89.  Defendant asserts that rather than following Mr. Shuman's instructions, Plaintiff took the form to his girlfriend's doctor appointment and the physician, instead of completing a medical certification form, wrote in under the "Request for Reason" section of the request for leave form, "delivery of newborn employee may need to be out of work intermittently to care for newborn." Id. at 163-64; see also Rec. Doc. 16, Ex. G.  Plaintiff then returned the form to a receptionist at the Distribution Center on or about May 28, 2002.  (Rec. Doc. 16, Ex. A [Waugh Depo.] at 161).  Defendant argues that Plaintiff failed to comply with its notice obligations for approval of leave under the FMLA, despite the fact that Lowe's made clear its notice requirements.

On May 29, 2002, Ms. Lazovi gave birth to Plaintiff's son, Branden, who

was born healthy.  <u>Id.</u> at 157.  Plaintiff testified at his deposition that he went to the

Distribution Center on May 31, 2002 to speak with his supervisor, Bill Palko ("Mr.

Palko"), to determine if his leave request was approved:

> Mr. Barton (Counsel for Lowe's):      And what did Mr. Palko tell you?
>
> Plaintiff:      He said he couldn't – he wasn't certain at that point.  He was supposed to check on it for me.
>
> Mr. Barton:  All right.
>
> Plaintiff:      And then before the end of the shift, he told me, as far as what he had, it looked like it was approved.
>
> Mr. Barton:  As far – he said as far as what he had, it looked like it was approved?
>
> Plaintiff:      Yes. Mr. Shuman wasn't there, but as far as the notes that, I guess were left, it looked like it was approved.
>
> Mr. Barton:  But you understood Mr. Shuman had to approve the leave, didn't you?
>
> Plaintiff:      Yes.
>
> Mr. Barton:  Mr. Palko couldn't approve the leave, could he?
>
> Plaintiff:      Not that I know.

<u>Id.</u> at 109-110.  On June 3, 2002, Mr. Shuman approved Plaintiff's request for

intermittent leave.  (<u>See</u> Rec. Doc. 16, Ex. G).

From June 3, 2002 through July 10, 2002, the date written under the

"Expected Return from Leave Date" column of the request for leave form, Lowe's

asserts that Plaintiff was late or absent from work eight days.  See id. at Ex. E.  Of these eight days, Lowe's excused Plaintiff's absences and tardiness six times.  On three of these excused days, June 23, June 29, and June 30, 2002, Plaintiff phoned the call-in line and requested FMLA leave.  Id.; see also Ex. H.  From the period of June 3, 2002 through July 10, 2002, the only contested date is that of June 16, 2002.[1]

Finally, we will discuss the time period from July 10, 2002 through August 17, 2002.  On July 13, 2002, Lowe's assessed Plaintiff an occurrence when he attempted to use a day of leave.  (See Rec. Doc. 16, Ex. H).  On July 14, 2002, Plaintiff asserts that Matthew Tacelosky ("Mr. Tacelosky"), Operations Manager of the Distribution Center, spoke with him and explained that the request for leave form indicated that the FMLA period expired on July 10, 2002, to which Plaintiff testified that he thought his leave was supposed to be at least six weeks.  Id., Ex. A, at 104, 194-95.  Plaintiff was directed to speak with Mr. Shuman about the matter.

Subsequently, Plaintiff missed work on July 21, 26, 27, 2002 and on August

---

[1] We note at this juncture that as Defendant submits, Plaintiff testified in his deposition that he does not dispute that on June 15, 2002, he was properly assessed half an occurrence for being five and a half hours late and failing to phone the call-in line to request FMLA leave.  (See Rec. Doc. 16, Ex. A [Waugh Depo.] at 180-81).  In his brief in opposition to the Motion, Plaintiff's counsel blatantly contradicts his client's deposition testimony by stating June 15, 2002 (.5 occurrence) is a contested date by the parties.  (See Pl.'s Br. Opp. Def.'s Mot. Summ. J. at 2).  Based on Plaintiff's deposition testimony, we conclude that the half occurrence assessed to Plaintiff on June 15, 2002 is undisputed by the parties.

2, 2002.  Plaintiff received two written warnings from his supervisor, Leo Lubinsky, regarding his attendance.  Id. at Ex. E; see also Ex. J.  As we will discuss more fully below, Plaintiff has contested the following dates within the July 10, 2002 through August 17, 2002 time period: July 13, July 21, July 26, and July 27, 2002 (.5 occurrence).

Plaintiff read and signed the aforementioned written warnings, which both explained that if Plaintiff received another "No Call/No Show" or was late or absent during the rolling twelve month period, he was subject to termination.  Rec. Doc. 16, Ex. J; see also Ex. A at 206-7.  After signing the warnings, Plaintiff requested and received his attendance calendar which outlined what days he missed work and how many occurrences had been assessed.  Id. at Ex. A, at 209-10.  On August 16, 2002, Plaintiff arrived late to work.  Lowe's terminated Plaintiff on August 17, 2002 for violating Lowe's Attendance Policy.

## STANDARD OF REVIEW:

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  FED .R. CIV. P.  56); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).  The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial."  Young v. Quinlan, 960 F.2d 351, 357

(3d Cir. 1992). Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact finder could draw from them. Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. Id. at 325.

Federal Rule of Civil Procedure 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. Celotex Corp., 477 U.S. at 322-23.

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511

(3d Cir. 1994) (citation omitted).  However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original).  "As to materiality, the substantive law will identify which facts are material."  Id. at 248. A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

## PROCEDURAL HISTORY:

On August 13, 2004 Plaintiff filed a complaint against Defendant in the United States District Court for the Middle District of Pennsylvania alleging that his rights under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") were violated when Lowe's terminated his employment.  (See Rec. Doc. 1).  Plaintiff asserts that Lowe's failed to provide him with specific written notice of his rights and responsibilities when he took intermittent FMLA leave as

required by 29 C.F.R. § 825.301(b) and that Lowe's termination of Plaintiff violated his rights under the FMLA.

On May 2, 2005, Lowe's filed the instant Motion asserting that it is entitled to summary judgment on Plaintiff's FMLA claim for the following reasons: (1) Plaintiff was not entitled to intermittent FMLA leave; (2) Lowe's provided Plaintiff with all notice required by the FMLA and its regulations; (3) Lowe's granted Plaintiff intermittent FMLA leave each time he properly requested leave during his FMLA approved time period; (4) even assuming Plaintiff was denied FMLA leave on June 16, 2002, the only date in question, he would still have been terminated because he had accumulated 11.5 occurrences under the company's written attendance system.  (See Def.'s Mot. Summ. J. at 1).

The Motion has been briefed by the parties and is therefore ripe for disposition.

**DISCUSSION:**

A.      **Whether Plaintiff was eligible for and granted intermittent FMLA leave by Defendant?**

The FMLA entitles eligible employees[2] to twelve unpaid work weeks of leave during a twelve month period for one or more of the following:

(A)      Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.

(B)      Because of the placement of a son or daughter with the employee for adoption or foster care.

(C)      In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

(D)      Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1) (2005).

In addition, 29 U.S.C. § 2612(b)(1) provides information concerning leave taken intermittently or on a reduced leave schedule.  29 U.S.C. § 2612(b)(1) provides, in pertinent part, as follows:

(1) In general.  Leave under subparagraph (A) [leave pertaining to

---

[2] As Defendant submits, the FMLA defines an "eligible employee" as one who has been employed for at least twelve months by the employer and for at least 1,250 hours during the previous twelve month period.  29 U.S.C. § 2611(2)(A) (2005).  Defendant asserts that it does not dispute that Plaintiff is an eligible employee under the FMLA.  (See Def.'s Br. Supp. Mot. Summ. J. at 13).

birth of a child and care for such child] or (B) [leave pertaining to the placement of a child with the employee for adoption or foster care] of subsection (a)(1) shall not be taken by an employee intermittently or on a reduced leave schedule *unless the employee and the employer of the employee agree otherwise*.

29 U.S.C. § 2612(b)(1) (emphasis added).

Although Plaintiff's complaint does not explicitly state the type of claim he has brought against Lowe's under the FMLA, it is clear to the Court that Plaintiff's FMLA claims against Lowe's should be analyzed as an interference claim under 29 U.S.C. § 2615(a)(1), which makes it unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided by the FMLA. Id.

Defendant argues that Plaintiff's claim fails as a matter of law for several reasons. Lowe's initially asserts that Plaintiff was never entitled to intermittent FMLA leave. Defendant contends that the alleged illness of a girlfriend and babysitting problems are not FMLA qualifying reasons to take FMLA leave, intermittently or otherwise. Moreover, Defendant maintains that even if Plaintiff claims that he took leave to care for his child, the claim still fails because an employee cannot take intermittent leave to care for a child without a serious health condition. (See Def.'s Br. Supp. Mot. Summ. J. at 14-17).

In response, Plaintiff argues that pursuant to 29 U.S.C. § 2612(b)(1), Mr.

Shuman approved Plaintiff's request for leave form, which states as the reason for request, "Delivery of newborn employee may need to be out of work intermittently to care for newborn."  (<u>See</u> Rec. Doc. 16, Ex. G).  Plaintiff therefore acknowledges that while the birth of a child and care for such child is not a permissible reason for intermittent leave, intermittent leave may be taken for such a reason if the "employee and the employer of the employee agree otherwise."  <u>See</u> 29 U.S.C. § 2612(b)(1); <u>see</u> <u>also</u> Pl.'s Br. Opp. Def.'s Mot. Summ. J. at 8-9.

After a careful review of the record, we agree with Plaintiff that the approval by Lowe's of Plaintiff's request for leave created an agreement between Plaintiff and Lowe's, as contemplated by 29 U.S.C. § 2612(b)(1).  Additionally, while Lowe's asserts on several occasions that Plaintiff took intermittent leave due to an alleged illness of his girlfriend, not the birth of his son, Plaintiff's deposition testimony clearly reveals that he was requesting intermittent leave to take care of his baby.

> Q.   You [Plaintiff] testified earlier that Mr. Shuman gave you this leave request form when you spoke to him about requesting leave.  Does this document refresh anything else that you said to Mr. Shuman on that date?
>
> A.   I [Plaintiff] had just – I had inquired about like for the start time, and I talked to him roughly about what I knew at the time.
>
> Q.   What did you tell him you knew at the time?

A.   Just that she was restricted to her bed currently, and her doctors had told her that that was most likely going to continue after the birth for a period of at least six weeks.  They would verify that at her 6-week checkup, whether it would continue longer.

Q.   *Were you requesting leave to take care of your girlfriend?*

A.   *No.  I was requesting leave to take care of the baby.*

Q.   Okay.  Were you requesting intermittent leave?

A.   Yes...

Q.   So it's the doctor who said employee may be out of work intermittently to care for newborn?

A.   Yes.

Q.   *It doesn't say care for wife or girlfriend?*

A.   *Right.  My reason for asking for the leave was because she [Ms. Lazovi/Plaintiff's girlfriend] was going to be unable to care for the baby.  She wasn't even able to lift him to change his diaper, to feed him.*

See Rec. Doc. 16, Ex. A [Waugh Depo.] at 156-57, 164 (emphasis added).

We therefore conclude that Plaintiff was entitled to and granted intermittent FMLA leave to care for his newborn child, Branden, based on an agreement between Plaintiff and Lowe's.

**B.   Whether Lowe's complied with the FMLA provisions concerning required notice?**

Plaintiff argues that Lowe's failed to provide him with adequate notice

15

concerning his obligations under the FMLA. (See Pl.'s Br. Opp. Def.'s Mot.

Summ. J. at 9-11). In response, Lowe's asserts that even if Plaintiff was entitled to

intermittent FMLA leave, he failed to provide proper notice in order to qualify for

leave despite the fact that Lowe's made clear its notice requirements. (See Def.'s

Br. Supp. Mot. Summ. J. at 17-21). In addition, Lowe's contends that Plaintiff

received notice of each right and responsibility of which he was required when he

took FMLA leave.

Notice requirements under the FMLA are set forth at 29 C.F.R. § 825.301,

and provide, in pertinent part, as follows:

> (a)(1) If an FMLA-covered employer has any eligible employees and
> has any written guidance to employees concerning employee benefits
> or leave rights, such as in an employee handbook, information
> concerning FMLA entitlements and employee obligations under the
> FMLA must be included in the handbook or other document.

> (b)(1) The employer shall also provide the employee with written
> notice detailing the specific expectations and obligations of the
> employee and explaining any consequences of a failure to meet these
> obligations.

> (c) Except as provided in this subparagraph, the written notice
> required by paragraph (b)...must be provided to the employee no less
> often than the first time in each six-month period that an employee
> gives notice of the need for FMLA leave (if FMLA leave is taken
> during the six-month period). The notice shall be given within a
> reasonable time after notice of the need for leave is given by the
> employee – within one or two business days if feasible.

29 C.F.R. § 825.301.

To ascertain whether Plaintiff had proper notice of his rights and responsibilities under the FMLA, we must determine whether Lowe's complied with the applicable provisions of 29 C.F.R. § 825.301. As we previously discussed, Plaintiff's first several days at the Lowe's Distribution Center were spent at employee orientation or "initial training" where Plaintiff received and read an employee orientation workbook entitled "Lowe's Distribution Orientation Workbook." This workbook contained Lowe's Attendance Policy, addressed the "Call-In" requirement for absent or tardy employees, encouraged employees to familiarize themselves with the Company's policy for complying with the FMLA, and included a fact sheet outlining Plaintiff's rights under the FMLA. (See Rec. Doc. 16, Ex. A [Waugh Depo.] at 43-68). The FMLA fact sheet provided to Plaintiff explained his rights and responsibilities under the FMLA including job and benefits protection, Lowe's advance notice, as well as medical certification requirements prior to taking FMLA leave. (See Rec. Doc. 16, Ex. B, at 2). Defendant accurately submits that Plaintiff testified that he read and understood Lowe's Attendance Policy and the consequences for not following it.

The only other documentation provided to Plaintiff concerning the FMLA and his rights and responsibilities thereunder is a Lowe's employee request for leave form that Mr. Shuman provided Plaintiff on or about May 24, 2002, when

17

Plaintiff approached Mr. Shuman about taking leave pursuant to the FMLA.  The

form states that employees requesting Employee/Family Member Leave may be

eligible for certain FMLA rights as noted on the reverse side of the form; however,

Plaintiff accurately submits that the reverse side of the form is blank.  The only

information on the form concerning the FMLA is the following: the length of time

an employee must have been employed to receive family medical leave;

instructions concerning placing a mark next to "family/medical" leave requested; a

statement concerning the attachment of certification from a health care provider if

family medical leave is requested by an employee; and a sentence appearing next

to an asterisk which states, "Employee signature confirms employee notification

and receipt of FMLA rights."  (See Rec Doc. 16, Ex. G).

Once an employee gives notice to an employer that FMLA leave is

requested, the employer is charged with the duty to "provide the employee with

written notice detailing the specific expectations and obligations of the employee

and explaining any consequences of a failure to meet these obligations."  29 C.F.R.

§ 825.301(b)(1); see also Wilson v. Lemington Home for the Aged, 159 F.Supp.2d

186, 192-93 (W.D. Pa. 2001).  On or about May 24, 2002, when Plaintiff met with

Mr. Shuman, he inquired as to whether he was eligible for family medical leave

because of his then-pregnant girlfriend's situation.  This conversation led Mr.

Shuman to provide Plaintiff with the aforementioned documentation, as well as the medical certification for a physician to complete, in order to have family medical leave approved by Lowe's.

It is well-settled that the FMLA regulations are very specific as to what must be provided in the written notice "detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." 29 C.F.R. § 825.301(b)(1). While the written notice may include additional information, it must specifically include the following:

(i)     that the leave will be counted against the employee's annual FMLA leave entitlement;

(ii)    any requirements for the employee to furnish medical certification of a serious health condition and the consequences of failing to do so;

(iii)   the employee's right to substitute paid leave and whether the employer will require the substitution of paid leave, and the conditions related to any substitution;

(iv)    any requirement for the employee to make any premium payments to maintain health benefits and the arrangements for making such payments...;

(v)     any requirement for the employee to present a fitness-for-duty certificate to be restored to employment;

(vi)    the employee's status as a "key employee" and the potential consequence that restoration may be denied following FMLA leave...;

(vii)   the employee's right to restoration to the same or an equivalent job upon return from leave; and,

      (viii)   the employee's potential liability for payment of health insurance premiums paid by the employer during the employee's unpaid FMLA leave if the employee fails to return to work after taking FMLA leave.

29 C.F.R. § 825.301(b)(1).  The aforementioned notice must "be provided to the employee no less often than the first time in each six-month period that an employee gives notice of the need for FMLA leave (if FMLA leave is taken during the six-month period).  The notice shall be given within a reasonable time after notice of the need for leave is given by the employee – within one or two business days if feasible."  29 C.F.R. § 825.301(c).  Finally, the applicable FMLA regulations provide the effect of failing to render proper notice by the employer.  "If the employer fails to provide notice in accordance with the provisions of this section, the employer may not take action against the employee for failure to comply with any provision required to be set forth in the notice."  29 C.F.R. § 825.301(f).

We find that there are genuine issues of material fact as to whether Lowe's complied with applicable notice requirements in the case <u>sub judice</u>, as Plaintiff only received the following FMLA documentation: Lowe's Distribution Orientation Workbook and FMLA fact sheet within the first several days of his employment; and the employee request for leave form when Plaintiff requested intermittent leave, which provided minimal FMLA information.   Genuine issues

of material fact exist regarding whether Lowe's complied with the FMLA

regulation requiring employers to "provide the employee with written notice

detailing the specific expectations and obligations of the employee and explaining

any consequences of a failure to meet these obligations."  See 29 C.F.R. §

825.301(b)(1).  Moreover, as previously noted, although the aforementioned

request form states that employees requesting Employee/Family medical Leave

may be eligible for certain rights "as noted on the reverse side of this form," the

reverse side of the form is blank and therefore utterly lacks information regarding

potential eligibility for FMLA rights.  See 29 C.F.R. §§ 825.301(b)(1); 825.301(c)

(Written notice requirements delineated in 29 C.F.R. § 825.301(b)(1) must be

provided to the employee no less often than the first time in each six-month period

that an employee gives notice of the need for FMLA leave, if FMLA leave is taken

during the six-month period.  "The notice shall be given within a reasonable time

after notice of the need for leave is given by the employee – within one or two

business days if feasible.").[3]

_____

[3] Moreover, we find it notable that an investigation undertaken by the United States
Department of Labor, Employing Standards Administration Wage and Hour Division ("DOL"),
regarding the Plaintiff and the propriety of Lowe's actions under the FMLA, concluded that
Lowe's violated several provisions of the FMLA.  (See Rec. Doc. 21, at 25-27).  Specifically, the
DOL determined that violations of the following FMLA provisions occurred in Plaintiff's case:
29 C.F.R. §§ 825.301(b), failure to give specific written notice; 825.301(f), prohibition of taking
adverse action against employee for notice violations; and 825.220, prohibition of discrimination
against employee for exercising FMLA rights.  Id. at 26.  The DOL explained that Plaintiff "was

In addition, we find that a genuine issue of material fact exists regarding whether Lowe's provided Plaintiff with proper notification of his "expected return from leave date."  We initially note that the request for leave form does not differentiate between continuous and intermittent leave.  Moreover, in his deposition, Plaintiff stated that the "expected return from leave date" was still blank when he turned it into Lowe's personnel and he assumes that Lowe's wrote July 10, 2002 to be Plaintiff's "expected return from leave date."  (See Rec. Doc. 16, Ex. A [Waugh Depo.] at 193).  Lowe's argues that Plaintiff requested intermittent leave to extend until his child's six week checkup and submits that July 10, 2002, is six weeks after Branden's May 29, 2002 birth date; however, Plaintiff's deposition testimony clearly indicates that he was requesting intermittent leave for a period of *at least* six weeks and potentially longer.  Plaintiff testified that he told Mr. Shuman that his girlfriend was "restricted to her bed currently, and the doctors had told her that that was most likely going to continue

---

terminated for excessive absence after returning from intermittent FMLA leave.  However, as stated in first Addendum, employee was not provided specific written notice of his rights and responsibilities when granted FMLA leave in May of 2002.  Back wages computed from employee termination on 8-17-02 until current...Back wages computed at $22,170.24."  Id.

By an August 11, 2003 letter, the DOL informed Plaintiff of the results of the investigation, namely, that he was not accorded FMLA leave as required, the estimation of back wages due, and that Lowe's was requested to comply with the FMLA; however, Lowe's did not agree to do so.  Id. at 27.

after the birth for a period of *at least six weeks*."  (emphasis added).  "They would verify that at her 6-week checkup, whether it would continue longer."  Id. at 156-57.  Finally, further evidence in support of the Court's determination that a genuine issue of material fact exists regarding whether Lowe's provided Plaintiff with proper notification of his "expected return from leave date" is the fact that three days after his leave period had expired, Plaintiff attempted to use another day of leave; however, Lowe's assessed him an occurrence.  It was not until July 14, 2002, as we previously noted, that Matthew Tacelosky, the Operations Manager of the Distribution Center, spoke with Plaintiff and explained that it was Lowe's position that Plaintiff's FMLA period had expired on July 10, 2002.

Viewing the facts and drawing all inferences in the light most favorable to the Plaintiff, as we must, we find that genuine issues of material fact exist as to whether Lowe's complied with applicable notice requirements, including providing Plaintiff with proper notification of his "expected return from leave date."[4]  For the purposes of this Motion, we are therefore unable to determine whether Lowe's should have assessed an occurrence for July 10, 2002 against Plaintiff.  Subtracting one occurrence from Plaintiff's 11.5 occurrence total reveals that he has two and a

---

[4] We note that although Defendant argues that Plaintiff failed to comply with his notice obligations for approval of family medical leave, we need not reach that issue for purposes of resolving the Motion as we have determined that genuine factual issues exist regarding Lowe's compliance with applicable notice requirements.

half occurrences more than the eight necessary to justify Plaintiff's termination for excessive absenteeism under Lowe's Attendance Policy.

As a result of the above, it is necessary to address the issue of whether Lowe's could have terminated Plaintiff regardless of its failure to provide Plaintiff with proper notification of his expected return from leave date.  First, with regard to Plaintiff's pre-June 2002 absences, the dates at issue are May 25, 2002, for which Plaintiff was assessed a half occurrence for being five hours late, as well as June 1, 2002, and June 2, 2002, for which dates Plaintiff was assessed one occurrence each.  Second and as previously noted, regarding Plaintiff's absences from June 3, 2002 until July 10, 2002, the only date at issue is June 16, 2002, for which Plaintiff was assessed an occurrence.[5]  Of these dates, Plaintiff states that the assessed occurrences for June 1, 2002, June 2, 2002, and June 16, 2002 are contested.  We will therefore determine whether genuine questions of material fact exist regarding whether Lowe's properly assessed occurrences for the aforementioned dates.

While Lowe's asserts that Plaintiff's FMLA period commenced on June 3, 2002, the date Mr. Shuman signed the request for leave form, Plaintiff argues that

---

[5] As we previously explained, despite his counsel's representation to the contrary, Plaintiff testified that he is not disputing the half occurrence assessed by Lowe's against him on June 15, 2005.  (See Rec. Doc. 16, Ex. A [Waugh Depo.] at 180-81).

Lowe's provides no substantiation for the implied assertion that an employer cannot approve family medical leave retroactively.  We find that the plain language of the request for leave form reveals that Plaintiff requested that his family medical leave commence on May 24, 2002.  Plaintiff accurately submits that if Mr. Shuman disagreed with the "Leave Start Date," it is a safe assumption that he would have changed the date written when he signed the form.  However, he did not do so.  In addition, Plaintiff testified that he properly called in to Lowe's to request family medical leave for June 1, 2002, June 2, 2002, as well as June 16, 2002; however, Lowe's maintains that the call-in log and employee absence reports demonstrate that Plaintiff failed to utilize the call-in line on those dates.

A genuine issue of material fact therefore exists concerning whether Plaintiff was properly assessed occurrences for the dates of June 1, 2002, June 2, 2002, and June 16, 2002.  For the purposes of this Motion, viewing this dispute in the light most favorable to Plaintiff, while we can as stated discern that Plaintiff was entitled to access the previously granted leave starting on May 24, 2002, we cannot ascertain whether he failed to utilize Lowe's call-in procedures to request family medical leave for the dates in question.  Accordingly, we cannot determine that Plaintiff was properly assessed occurrences for the dates of June 1, 2002, June 2, 2002, and June 16, 2002.  Moreover, as we previously indicated, for the purposes

of this Motion, we are also unable to determine whether Lowe's properly assessed an occurrence for July 10, 2002.

The result of this analysis is that when we subtract the four occurrences as just recited about which there are genuine issues of material fact, from the eleven and a half occurrences assessed by Lowe's, we cannot reach the conclusion suggested by Lowe's.  That is, it would be premature for us to find that Lowe's could have terminated Plaintiff for excessive absenteeism pursuant to their attendance policy, which requires eight occurrences in a twelve-month period to terminate an employee, notwithstanding the FMLA claims he asserts.  (See Rec. Doc. 16, Ex. B at 33-37).

The genuine issues of material fact that exist in the case sub judice necessitate that we deny Defendant's Motion for Summary Judgment.

**NOW, THEREFORE, IT IS ORDERED THAT:**

      1.    Defendant's Motion for Summary Judgment (doc. 16) is

             **DENIED**.


             s/ John E. Jones III
             John E. Jones III
             United States District Judge